HAGUE & CO. (INC.) *v.* UNITED STATES (No. 1664).[1]

1. "COMPOSED WHOLLY OF"—LACQUERED ARTICLES.
    An article made of metal and coated with lacquer for purposes of preservation and appearance is "composed wholly of" that metal within the meaning of paragraph 158, tariff act of 1913.

2. BASE-METAL SAFETY PINS AND HAIR PINS COATED WITH LACQUER, HOW DUTIABLE.
    The fact that pins answering to the description of paragraph 158, tariff act of 1913, are coated with lacquer does not take them without the operation of the words "composed wholly of" certain named metals in that paragraph and make them dutiable as manufactures of wire under paragraph 114.

United States Court of Customs Appeals, May 1, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7817 (T. D. 35912). [Affirmed.]

*Allan R. Brown* for appellant.

*Bert Hanson,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

[Oral argument Apr 12, 1916, by Mr. Brown and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise is metal safety pins and hairpins, lacquer coated. They were assessed for duty as "pins with solid heads without ornamentation, including safety pins and hairpins" under the provisions of paragraph 158 of the act of October 3, 1913, which reads:

158. Pins with solid heads, without ornamentation, including hair, safety, hat, bonnet, and shawl pins; any of the foregoing composed wholly of brass, copper, iron, steel, or other base metal, not plated with gold or silver, and not commonly known as jewelry, 20 per centum ad valorem.

The importers, who are appellants here, claim the articles properly dutiable at a lesser rate under the provisions of paragraph 114 as

---

articles made of wire. The case turns upon the point whether or not the lacquer coating takes them out of the provision "composed wholly" of iron as used in paragraph 158. Certain samples were submitted and referred by agreement for analysis by the chemist in charge at the appraiser's office at the port of New York. The chemist reported the character of the coating to be "*varnish* of lacquers." The report further recites:

Owing to the very small quantity of coating substances present on the sample, the amount separated is insufficient for proper identification.

It appears to contain some saponifiable fatty acid compound (probably oxidized oils), oxide of iron, insoluble nitrogenous material, and probably carbon black.

The Board of General Appraisers overruled the protest, upon the theory stated in their opinion as follows:

In effect, the contention of the importers is that by reason of the presence thereon of this coating these hairpins have virtually lost their identity as such, and for tariff purposes at least should be held to be merely manufactures of wire and classified accordingly under said paragraph 114.

We can not believe that the legislators ever entertained any such idea in enacting into law the provisions of said paragraph 158. It is a matter of common knowledge, of which the board is certainly entitled to take judicial notice, that practically all of the common and ordinary hair, hat, bonnet, and shawl pins, which are employed for everyday use, are invariably coated or painted with some substance intended to act as a preservative against atmospheric conditions. That Congress was also fully cognizant of this self-evident fact is known by the very language of paragraph 158, since it specifically excepts from the operation thereof any of the pins enumerated therein which are plated with gold or silver. An uncoated or unplated hairpin is such a rare item of merchandise that it is hardly conceivable that Congress would have deemed it necessary to enact a special provision of law to cover it.

The court is of the opinion that the decision of the board should be affirmed. A material in quantity so small as to be insufficient for identification can not be said to be one entering into the composition of an article to a degree sufficient to characterize in any manner that article. Moreover, it appears with this merchandise that it was no more than a varnish or a paint not in fact composing the article or entering therein as a component material, but added for the purposes of preservation and appearance. It is in no respect different, in the opinion of the court, from the painting of any other article of merchandise. Silk goods are weighted before being calendered. That fact, however, does not render them any the less articles composed wholly of silk. The words "composed wholly of" were considered in Schiff & Co. *v.* United States (140 Fed., 63), affirmed in United States *v.* Schiff (145 Fed., 1023), with reference to braids of straw the ends of which were temporarily tied with cotton threads *to prevent raveling.* It was held by the Circuit Court of Appeals for the Second Circuit that such did not exclude the merchandise from a provision for braids composed wholly of straw.

The decision of the Board of General Appraisers is *affirmed.*