(C. D. 1831)

ARICO, INC.
INTRA-MAR TRANSPORT CORP. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 12, 1956)

*Barnes, Richardson & Colburn* (*James F. Donnelly, E. Thomas Honey,* and *Eugene F. Blauvelt* of counsel) for the plaintiffs.
*George Cochran Doub,* Assistant Attorney General (*William J. Vitale,* trial attorney), for the defendant.
*Lamb & Lerch* (*David A. Golden* of counsel) as *amicus curiae.*

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on decorated earthenware articles, imported from Italy on or about July 30, 1948, at 10 cents per dozen pieces and 50 per centum ad valorem under paragraph 211 of the Tariff Act of 1930. It is claimed that the merchandise is properly dutiable at 5 cents per dozen pieces and 25 per centum ad valorem under said paragraph 211, as modified by the trade agreement with Mexico, T. D. 50797, as decorated earthenware, having a body not artificially colored and composed wholly of clay. A claim that the merchandise is dutiable at 25 per centum ad valorem and 10 cents per dozen pieces under said paragraph 211, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, has apparently been abandoned, no proof having been offered that the merchandise is tableware.

The pertinent provisions of the tariff act and the trade agreement are as follows:

PAR. 211 [Tariff Act of 1930]. Earthenware and crockery ware composed of a nonvitrified absorbent body, including white granite and semiporcelain earthenware, and cream-colored ware, terra cotta, and stoneware, including clock cases with or without movements, pill tiles, plaques, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; * * * painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 10 cents per dozen pieces and 50 per centum ad valorem.

PAR. 211 [as modified by the trade agreement with Mexico, T. D. 50797]. Earthenware and crockeryware composed of a nonvitrified absorbent body, including white granite and semi-porcelain earthenware, and cream-colored ware, terra cotta, and stoneware, including clock cases with or without move-

ments, pill tiles, plaques, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; any of the foregoing which is earthenware having a body not artificially colored and composed wholly of clay, whether or not of a class or kind specified in any previous trade agreement concluded under the provisions of section 350 of the Tariff Act of 1930:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for_____5¢ per doz. pieces, and 25% ad valorem.

Provided, That if the body of such ware is covered wholly or in part with an engobe or a body slip, the engobe or body slip shall for the purposes of this provision be considered a part of the body.

At the trial, a sample of the merchandise was received in evidence as plaintiffs' exhibit 1. It consists of a decorated pottery basket, ornamental in character. According to a stipulation of counsel for the respective parties, the following invoice notation correctly describes the composition of the article, "the body is composed of clay, with addition of calcium and marble dust; not artificially colored; no engobe." It was also agreed:

\* \* \* that the addition of calcium and marble dust, as stated on the invoice, consisted of calcium carbonate in the form of marble dust, which was mechanically mixed with natural clay when the clay was mixed with water to prepare it for potters' use.

Two witnesses testified for the plaintiffs by means of depositions taken before the American vice consul in Florence, Italy. (Plaintiffs' exhibits 2 and 3.) The first was Dr. Umberto Preziotti, director of the Government School of Ceramics at Sesto Fiorentino, Florence, Italy. According to the deposition, the witness has been familiar with ceramic problems from early childhood, and the greater part of his career has been spent in studying and working with ceramics. Since 1941, his special field has been majolica. In addition to holding a diploma in industrial art and a degree in architecture, he has been director of various schools of art in Italy.

According to this witness, the word "clay" comprehends all kinds of plastic and waterproof earths used in the fabrication of ceramic products. The general components of clay are limestone, aluminum, quartz, feldspar, carbonates of various kinds, silicates, and, in small percentages, iron, manganese, salts, and various impurities. Clay varies in its composition and in its qualities of porousness, hardness, and capacity for shrinkage and resistance to fire, in accordance with the percentage of these components. Natural clay varies from pit to pit and also according to the locality from which it is taken. It is customary to mix various types of earth in order to obtain a uniform kind of clay for the manufacture of earthenware. All of the elements are found in natural clay, but generally in quantities either too small

or too great, so that it is necessary to correct the proportion. The ingredients usually added are quartz, feldspar, silicates, calcium carbonate, or marble dust, and old recooked clay. Where it is possible to find a pit containing suitable clay with sufficient carbonates, feldspar, and quartz, earthenware can be made without any additional ingredients. However, the quality of the product may be inferior. Clay to which quartz, marble dust, flint, or other carbonates are added does not differ in chemical composition from natural clay which contains these ingredients in similar proportions. After firing, it is not possible to differentiate, either by chemical analysis or by physical inspection, between articles made from natural clay and those made from clay with added carbonates. Both natural clay and clay to which carbonates have been added are considered by the deponent to fall within the definition of "clay," since the chemical components are the same.

Plaintiffs' second witness was Dr. Giovanni Canneri, professor ordinario of analytical chemistry at the University of Florence. He has been acquainted with and interested in the problems of ceramics since his youth, has discussed them with workers and artisans, and, in his professional life, has been especially concerned with ceramics. He has a doctorate in chemistry, a degree in pharmacy, and a certificate to teach in any Italian university. According to this witness, clay, as found in its natural state, is "an unrefined, impure argilla or aluminum silicate, containing as its chief components calcium carbonate, free silica, iron oxide, magnesium carbonate, and alkalis." Clay varies in composition from one locality to another. In most cases, it is necessary to alter the composition of clay utilized in the manufacture of earthenware. The ingredients added are essentially the same as those normally found in natural clay, but in insufficient quantity. Italian clay requires the addition of ingredients, such as silica (flint), quartz, or carbonate, or marble dust, to make it less pliable. All clay which contains a certain percentage of carbonate, whether naturally or artificially added, is known as clay. Marble dust, quartz, and flint are not clay, but are natural components of clay. Quartz and silica are added to make clay less pliable and carbonates to improve the clay's capacity to resist the firing, to keep a normal shape without cracking, and to take varnish and decoration.

Defendant's witnesses were Arthur Simion Watts, emeritus professor of ceramic engineering in Ohio State University; John Henry Koenig, professor of ceramic engineering at Rutgers University; and Harry William Thiemecke, ceramic engineer with the Homer Lock & China Co., Newell, W. Va. Dr. Watts is a professional engineer and holds degrees as a professional ceramic engineer and as a doctor of science. He has held commercial positions as a ceramic engineer, has done graduate research work in ceramics, has worked for the

Quarry Technologists, United States Bureau of Mines, developing information on ceramic materials, and has served as a professor of ceramics at Ohio State University from 1914 to 1946. Dr. Koenig is director of the School of Ceramics at Rutgers University and of the New Jersey Ceramic Research Station. He holds a number of degrees in ceramic engineering and has had commercial and academic experience in the field. Mr. Thiemecke also holds various degrees in ceramic engineering and is a registered professional ceramics engineer in the States of Ohio and West Virginia.

The testimony of these witnesses, which is substantially the same, may be summarized as follows: Some earthenware is made from clay as it comes from the earth, some is made from various types of clay mixed together, and some is produced with clay to which has been added other material. Bodies composed solely of clay are called common clay bodies. Where ingredients are added, the mixtures are known as compounded bodies, composed bodies, mixed bodies, or synthetic bodies. In those cases, the clay may be mixed with feldspar, talc, whiting (which includes marble dust), flint, magnesium, or calcium carbonate. Such added materials are not clay in themselves. The chief components of clay are alumina, silica, and combined water, or hydrous aluminum silicate. The other ingredients mentioned may be found in natural clays as impurities or auxiliary minerals, but they are not understood to be clay.

Earthenware articles produced with a body composed of clay mixed with marble dust are not identical physically with earthenware articles made with a clay body only. The former has the property of resisting crazing, that is, the cracking of the glaze on the surface of the body. It also resists after-expansion, which causes a failure of the glaze, and is more resistant to mechanical and heat shock. It fires better, the color is superior, and the quality of the product is higher. In the opinion of the witnesses, earthenware produced from clay to which calcium carbonate in the form of marble dust has been added is not an article manufactured wholly of clay. Clay from which impurities are removed remains clay, but, if anything is added, it is no longer clay and is not so recognized in the technical, professional, or industrial world.

On cross-examination, Dr. Watts testified that he had never seen earthenware articles made of a clay which contained only alumina, silicates, and combined water, that is, pure clay. He said there were no natural clays which contained calcium carbonate in sufficient quantity to make commercial earthenware. He explained that the calcium carbonate which is added to clay is not the same as the calcium carbonate in natural clay, since the latter generally contains both calcium and magnesium and does not contain alkali. With the presence of a small amount of alkali, the calcium carbonate becomes

more effective. However, the calcium carbonate in natural clay would not be sufficient, because the firing temperature would have to be too high to be commercially practical.

The witness stated further: "Normally calcium carbonate is not a component of most ceramic bodies. It is what we call an auxiliary flux, supplemental to an alkaline flux." He explained that a flux is something that assists the other ingredients in the formation of earthenware during the firing process and that, in his opinion, the addition of calcium carbonate by the Italian potters was solely as a flux.

Dr. Watts testified also that, in Zanesville, Ohio, which is a center of the art pottery industry, earthenware similar to the instant basketware is made from clays known as number-2 fire clays and no fluxing materials are added. Such clay is used in refractory material and for making flue linings, common household stoneware, and like products.

Dr. Koenig and Mr. Thiemecke also testified that earthenware articles are manufactured from clay as it comes from the ground and that such articles include flower pots, garden ornaments, stoneware, and utility ware used in the home.

The witness Koenig added that there is a tendency among earthenware manufacturers to refine the clay, remove the impurities, and then add back in controlled quantities certain of those chemicals. He said that the purpose is to get a controlled body and that that is what is done when marble dust is added.

Mr. Thiemecke had had experience with mixing various types of natural clays to make a clay body and stated that the purpose was to achieve the benefits of certain physical properties in the resulting product; that the presence of some of the impurities would serve the purpose of fluxes in the firing of the body.

The sole question before the court is whether this merchandise, made of a body composed of clay with the addition of calcium carbonate in the form of marble dust, not artificially colored, and with no engobe, falls within paragraph 211, as modified by the Mexican Trade Agreement, *supra*, as earthenware, having a body not artificially colored and composed wholly of clay. If it does not, it is properly dutiable, as assessed by the collector, under paragraph 211 of the Tariff Act of 1930 as decorated earthenware, not specially provided for.

Plaintiffs contend that the addition of calcium carbonate in the form of marble dust to the natural clay was merely as an auxiliary flux and did not change the imported earthenware to an article, having a body not composed wholly of clay. It is claimed that the flux is added only to promote a fusion of the clay and that the testimony shows that, where the proper balance of ceramic ingredients is maintained, natural clay to which calcium carbonate is added is not dif-

ferent in chemical composition from natural clay. However, the witness Watts stated that the added calcium carbonate was not the same as that in natural clay, since the latter generally contains both calcium and magnesium. In any event, it is clear that something was added to the natural clay and that that ingredient was not clay *per se*. While calcium carbonate, and other ingredients, are often contained in clay as impurities, they are not, themselves, clay. Pure clay is hydrous aluminum silicate.

According to the witnesses, ingredients are added to natural clay in definite proportions, in order to get a controlled body, that is, material which will have the qualities necessary to create the intended product. In the instant case, the record does not establish the percentage of calcium carbonate added to the clay, but it evidently was sufficient to give the article attributes which it would not otherwise have had. In addition to serving as a fusing agent, the added material gave the article the property of resisting crazing, made it more resistant to after-expansion and mechanical and heat shock, gave it a superior color, and improved its quality. Thus, the added calcium carbonate was not negligible, but was introduced into the clay for a definite purpose.

The case of *Hague & Co. (Inc.)* v. *United States*, 7 Ct. Cust. Appls. 75, T. D. 36391, relied upon by plaintiffs, is easily distinguished. There, pins coated with lacquer were held to be composed wholly of iron, the court stating (p. 76):

* * * A material in quantity so small as to be insufficient for identification can not be said to be one entering into the composition of an article to a degree sufficient to characterize in any manner that article. Moreover, it appears with this merchandise that it was no more than a varnish or a paint not in fact composing the article or entering therein as a component material, but added for the purposes of preservation and appearance.

Here, the calcium carbonate became a part of the material forming the article itself and gave it certain desired properties.

The record shows that there are clays which can be made into earthenware, without the addition of other ingredients. The products, however, are of a different type from that involved herein. They are common flower pots, garden ornaments, and general utility ware, whereas the instant merchandise is a higher quality ornamental pottery. Defendant's witnesses pointed out that there were three different types of earthenware, that produced from a single clay, that produced from mixed clays, and that produced from clay mixed with other ingredients. Where clay alone is used, the body is called a common clay body, but where clay and other ingredients are used, the mixture is called a composed body, a compounded body, or a synthetic body.

These differences have been recognized in tariff statutes and trade agreements and in tariff literature on the subject. For instance,

paragraph 210 of the Tariff Act of 1930 provides for common yellow, brown, red, or gray earthenware, composed of a body wholly of clay which is unwashed, unmixed, and not artificially colored. Preceding tariff acts provided for such earthenware made of natural, unwashed, and unmixed clay. (Paragraph 210, Tariff Act of 1922; paragraph 78, Tariff Act of 1913.) Earthenware composed of a nonvitrified absorbent body has been provided for in paragraph 211 of the Tariff Act of 1930, *supra*, and previously in paragraph 211 of the Tariff Act of 1922 and paragraph 79 of the Tariff Act of 1913. In the Summary of Tariff Information, 1921, page 290, it is noted that the general earthenware paragraph includes earthenware and stoneware articles made of mixed, washed, or prepared clays. The modification of paragraph 211 by the Mexican Trade Agreement, *supra,* provides for earthenware with a body composed wholly of clay, but does not require that the clay be unwashed or unmixed. *Guy B. Barham Co. for the Account of John Arconti* v. *United States*, 30 Cust. Ct. 140, C. D. 1512.

The Digest of Trade Data, issued in connection with the Mexican Trade Agreement, states (p. 31):

Pottery of the type here included, composed wholly of clay and not covered with an engobe or body slip other than of clay, constitutes a relatively small proportion of total imports under paragraph 211. It consists of inexpensive earthenware, largely the product of Indian handicraft workers. Although pottery of this description predominates in the imports from Mexico, it constitutes only a small proportion of that from other sources, most of which is manufactured from a carefully compounded mixture of clay and other materials.

  *   *   *   *   *   *   *

United States production of earthenware consists largely of household, table, and kitchen articles of the so-called semivitreous type. The body of this ware is formed from a mixture of clay, feldspar, and flint, which distinguishes it from the commoner grades of earthenware having a body wholly of clay. Domestic production of articles wholly of clay is covered, chiefly, by the statistics of art and garden pottery and flowerpots, the combined production of which in 1939 was $7,764,000.

See also the Summaries of Tariff Information, 1948, volume 2, part 1, page 156, wherein earthenware table and kitchen articles are divided into four groups: (1) Earthenware wholly of clay, imported almost exclusively from Mexico and covered by the Mexican Trade Agreement; (2) earthenware having a compounded body (clay, feldspar, etc.) but of low price and quality, imported almost entirely from Japan; (3) medium-priced earthenware (of compounded body) imported from each of the important foreign suppliers; and (4) high-priced earthenware (of compounded body), imported chiefly from the United Kingdom. While this portion of the summary refers to table and kitchen articles, it recognizes that there is a difference in earthenware articles, depending upon their composition, whether wholly of clay or of clay mixed with other ingredients, such as feldspar. See

also a grouping of earthenware in accordance with the composition of the body in *Industrial Chemistry, Inorganic,* volume 2, page 167, in an article entitled *"Earthenware,"* by Alfred B. Searle.

It is clear, therefore, that separate tariff provisions have been made for certain earthenware articles composed wholly of unmixed clay, for articles composed wholly of clay or mixed clays, and for other earthenware articles, including those having compounded bodies. Were plaintiffs' contentions to be upheld, these distinctions would become practically meaningless. According to the record, natural clays vary in composition depending upon the locality of the pit. Such clays may and often do contain ingredients which are not clay *per se.* These impurities or accessory minerals "lend to or control the physical properties of the given clay to the extent that many desirable attributes are given to the clay." (Encyclopedia of Chemical Technology, volume 4, page 48.) When they are not present or are in insufficient quantities in the particular clay used, they are added in controlled proportions, in order to get the desired results. Thus, under plaintiffs' theory, earthenware, whether composed solely of natural clay or of clay mixed with any other ingredient ever found in any natural clay, would be held to be composed wholly of clay. To state this proposition is to answer it.

In this connection, we note that, in *Guy B. Barham Co. for the Account of John Arconti* v. *United States, supra,* it was held that articles made of a mixture of "pegosa" or sticky black clay and "nonpegosa" or white clay, taken from the same pit, were made of mixed clays and were excluded from the provision in paragraph 210, as modified, for earthenware, composed of a body wholly of clay which is unwashed, unmixed, and not artificially colored. It was held that the articles did fall within the provision in paragraph 211, as modified, *supra,* for earthenware articles, having a body not artificially colored and composed wholly of clay. In the course of the opinion, the court said (p. 151):

In making provision for merchandise under paragraph 210, Congress specified that the body of the article shall be composed wholly of clay. If it had intended to refer to combinations of talc, kaolin, feldspar, silica, fuller's earth, etc., as argued by counsel for the plaintiff, the Congress would not have used the term "wholly of clay."

That statement is equally applicable to the provision in paragraph 211, as modified by the trade agreement with Mexico, *supra,* covering earthenware articles with a body composed wholly of clay.

We hold, therefore, that the merchandise involved herein, having a body composed of clay and calcium carbonate in the form of marble dust, is not composed wholly of clay and does not fall within the modification of paragraph 211 by the Mexican Trade Agreement, *supra.* The merchandise was properly assessed with duty by the

collector at 10 cents per dozen pieces and 50 per centum ad valorem under paragraph 211 of the Tariff Act of 1930 as decorated earthenware articles, not specially provided for. The protest is overruled and judgment will be rendered for the defendant.